H. K. HANNAH, DISTRICT ATTORNEY OF THE FIRST JU-
DICIAL DISTRICT, RESPONDENT, *v.* GILES WELLS,
JR., JOHN W. WELLS, WM. SONGER AND GILES
WELLS, SR., APPELLANTS.

AUTHORITY OF THE DISTRICT ATTORNEY TO SUE IN HIS OWN NAME.—The
District Attorney is authorized by statute to sue as plaintiff in a civil
action brought on an undertaking given as bail in a criminal case.

COMPLAINT IN AN UNDERTAKING.—In a civil action on an undertaking in the
nature of bail for defendant's appearance in a criminal case, the com-
plaint should show that the prisoner was charged with a crime, and it is
not sufficient to state that he was charged with "shooting and killing"
another.

CHARGE NEED NOT BE IN WRITING.—Where a defendant is brought before a
committing magistrate on a charge of felony, it is not essential to the
jurisdiction that the charge should be in writing.

*Per McArthur, J., dissenting:*

STATEMENT OF CRIME CHARGED IN AN UNDERTAKING ON ARREST.—It is not
necessary, in order to create a liability against the sureties on an under-
taking on arrest for crime, that the crime for which the person is ad-
mitted to bail should be set forth or described in the undertaking of
bail with the same exactness that is required in an indictment or com-
mitment. It is sufficient if the crime is referred to in general terms.

IDEM.—Every killing of a human being is presumed to be unlawful. The
words "shooting and killing" describe a crime generally, and, in an
undertaking, in a criminal proceeding, are a sufficient description of the
crime charged to create a liability against the sureties thereon.

APPEAL from Jackson County.

The facts are stated in the opinion of the Court.

*E. Steel,* for Appellants.

*J. H. Stinson and J. R. Neal,* for Respondent.

By the Court, UPTON, C. J.:

This appeal is from a judgment of the Circuit Court over-ruling a demurrer to the complaint in an action on an undertaking as bail in a criminal case.

The demurrer specifies two points of objection, the first being that the State and not the District Attorney should have been plaintiff in the cause, and the other that it does not appear on the face of the complaint that the Court in which the undertaking was required had jurisdiction of the subject.

The action is brought in the name of H. K. Hannah, District Attorney of the First Judicial District, as plaintiff, and the appellants claim, in support of the first point, that the case is within the provision of § 27 of the Civil Code, that "every action shall be prosecuted in the name of the real party in interest, except as otherwise provided in § 29." The appellants rely on the circumstance that § 27 and the following sections specify certain exceptions, and they claim that the express mention of these exceptions excludes all others, and shows that the Legislature intended there should be no other exceptions than those there mentioned.

The respondent relies on § 342 of the same Act, which provides that "fines and forfeitures may be recovered by an action at law in the name of the officer or person who by law is authorized to prosecute for them." The rule invoked by the appellant that express mention of specific exceptions raises an inference against all other similar exceptions, is an acknowledged rule of construction in all cases where it is applicable; but the present case is not within the rule. The respondent's right to appear as plaintiff is not based upon an inference, but upon a direct affirmative enactment, and the exceptions above referred to include "persons specially authorized by statute" among those who may sue, although not the real parties in interest.

Penal statutes frequently direct what disposition shall be made of fines recovered, and various statutes provide different modes of disposing of the money thus obtained. In some cases fines or forfeitures go to a particular municipal

corporation; in other cases, to a particular fund or object; and, in still other cases, the money recovered on a fine or forfeiture may be devoted to several different purposes; and it may be in some cases a matter requiring much consideration to determine who may be the real party in interest. Section 342 (Civil Code) simplifies the proceeding by permitting the action, in all these cases, to be brought in the name of the officer who is authorized to sue. It being expressly provided that actions of this class may be brought in the name of the officer, and the provision not being repugnant to the more general provision above referred to, the Court is of the opinion that the action is properly brought in the name of the officer.

On the second point, that, by the complaint, it does not appear that the Court, in which the undertaking was required, had jurisdiction, it is necessary to observe a distinction between a statement of the essential facts, and a statement of the evidence that will sustain or establish a cause of action. As the case is now presented, the Court is not called upon to determine whether the evidence mentioned in the complaint, and which the plaintiff claims the right to introduce, is sufficient to establish a cause of action.

The complaint alleges that on an examination had before a Justice of the Peace, Joseph Wells was held to answer the charge of "shooting and killing one James Dennis;" that these defendants entered into an undertaking for the appearance of the said Joseph Wells in the Circuit Court, etc., to answer the charge of shooting and killing one James Dennis, and that the said Joseph Wells afterwards made default.

The principal point made in this connection by the appellants is, that it is not shown by the complaint that Joseph Wells was charged with a crime; that it should be alleged that the examination was upon a charge of murder or manslaughter, or at least that the prisoner was charged with some crime known to the law, otherwise the Justice would have no jurisdiction, and the undertaking would be void.

The complaint also avers that the Grand Jury found an in-

dictment charging said Wells with the crime of murder in shooting and killing James Dennis, and sets out copies of the undertaking and of the entry of default, but it is not directly alleged that Wells had been charged with murder at the time he was admitted to bail on the undertaking in question.

It was admitted on the argument that the undertaking recites that Wells was held to answer on a charge of "shooting and killing James Dennis," and that there was no written complaint on file charging a crime in other language than that used in the recital, and the case has been argued on the theory that unless the allegations of the complaint in this cause can be sustained as setting forth a cause of action, no action can be maintained upon the undertaking.

It is assumed that if there was not a written complaint laid before the magistrate, sufficient of itself to be sustained as charging a crime, there can be no proof that the magistrate had jurisdiction.

The respondent claims, substantially, that the defects in the complaint and in the recitals, set out in the undertaking, are defects in form only, which should be disregarded, and that inasmuch as the complaint sets out correctly the circumstances that transpired in the Magistrate's Court, it is in proper form and presents the merits of the case. Assuming that all the material facts that can be proved are now before the Court, he urges that parties who have entered into an undertaking of this kind should not be permitted to defeat their contract because of a mere matter of form; that the objections to the form of charging the crime should have been made before the committing magistrate, and that the informality of the charge should be deemed waived. He cites authorities to the effect that an admission in the recitals of an undertaking that the defendant was duly held to bail will estop the sureties. If it is true, as this argument assumes, that the defendant Wells was legally in custody, charged with felony, and was released at the request and on the undertaking of the defendants, not only public policy but correct practice requires the Court to sustain a complaint setting out those facts; and if

it were clear that this complaint states all the essential
facts that can be proven, in regard to the nature of the
charge and the magistrate's jurisdiction, this Court would
be disposed to go to the limit of its discretion in sustaining
its allegations; but the complaint states circumstances and
leaves the important fact, in regard to the arrest and cus-
tody being on a charge of felony, to be inferred.   The re-
spondent asks the Court to infer, from the circumstances
set out, a fact which is not alleged; namely, that the de-
fendant was charged with a felony.  · The pleader should
state the essential facts which he thinks will be inferred
from the proof, and leave the circumstances to be adduced
on the trial in support of the truth of what is alleged.

One branch of the fact necessary to constitute the cause
of action is, that the defendant Wells was charged with a
crime—that an examination was had, and he was held to
answer, or at least that he was in custody on the charge.
The pleader should have charged these facts, if he believed
them to be true, and he should not insert in the complaint
what he believes to be the proofs, and omit the material
fact which he thinks those proofs will establish.

If an averment that Wells was charged with a crime shall
be put in issue, and a question arises on the trial as to the
sufficiency of the evidence to prove that he was charged with
murder, the question whether the complaint against the
prisoner was sufficient can be finally determined on the trial.
I am of opinion that the complaint in this cause cannot be
sustained, but that final judgment on the merits of the
cause should not be rendered in favor of the defendants at
the present time, because it is evident from the arguments
of counsel that the subject-matter that was intended to be
litigated is not before the Court.   I cannot assent to the
position assumed by the counsel of the appellant, that the
defect in the form of the complaint filed in the Justice's
Court is fatal to the jurisdiction of the committing mag-
istrate.   In cases where a felony is charged, the law does
not require that the complaint shall be in writing before the
magistrate can have jurisdiction to proceed in the discharge
of his duties.   It is of constant occurrence that persons are

brought before magistrates without warrant, and charged with crime by persons who perhaps are unable to write, and much less able to draw up a criminal charge in apt words. Any person who sees a felony committed is authorized to arrest a felon without a warrant and take him before a magistrate; and there is nothing in the statute, or the nature of the proceeding, to render it necessary, or reasonable, that the magistrate should set about drawing up a formal written charge before he commences the examination of witnesses.

Under § 383 he has power, if a continuance becomes necessary, to commit the defendant or to discharge him upon his giving bail, before the examination is commenced, and if no continuance is required he proceeds immediately with the examination. Bail may be taken before a formal written charge is filed. Before a defendant can be put upon his trial in a criminal case there must be a written complaint (Crim. Code, §§ 82 and 83); but when application is made for a warrant of arrest under § 343 of the Criminal Code, or when a defendant charged with felony is brought before a magistrate for examination upon an arrest without a warrant, under § 379, the law does not require that the complaint shall be in writing before the magistrate has jurisdiction to take evidence in the former case, or to proceed with the examination in the latter. The complaint may be oral —the magistrate must inform the accused of the charge; but it is not made essential to the jurisdiction that the charge shall be previously reduced to writing. Section 401 of the Act provides that "if it appear from the examination that a crime has been committed, and that there is sufficient cause to believe the defendant guilty thereof," the defendant must be held to answer; and it has been held under similar statutes that when the evidence fails to show that the crime specially charged or designated in the warrant has been committed, but the acts proven against the defendant constituted a different crime from the one designated, the magistrate should hold the defendant to answer for the crime disclosed on the examination. There is not the same reason for requiring the charge to be reduced to

writing previous to such preliminary examination, as for requiring it in cases where the hearing is to be followed by final judgment, and I think our statute is in conformity with the general course of practice in the United States in failing to require a written complaint before the nature of the transaction is ascertained from the examination.

This being the rule prescribed by statute, it is not necessary to the jurisdiction of the committing magistrate that there should be a written complaint charging the crime with that certainty that is required in an indictment, and this Court would not be justified in assuming that under proper allegations the plaintiff must fail for want of proof. The question is not before us, and this Court does not, at the present time, undertake to determine in what manner the jurisdiction of the committing magistrate may be proved on the trial, nor do I wish to be understood as expressing an opinion on the questions whether a written complaint or an order holding a defendant to answer, couched in the terms set forth in the complaint, ought to be received as proof on the trial. The demurrer must be sustained on the ground that the complaint fails to show that the prisoner, for whose release the undertaking was given, was charged with crime.

For reasons above stated, the cause will be remanded, that the respondent may have an opportunity to make such application to the Circuit Court as he may deem proper.

McARTHUR, J., dissenting:

I am unable to concur with the views expressed and the conclusion reached by my brethren upon the second point discussed in the opinion just read by the Chief Justice. Assuredly the undertaking of bail was a contract, and one, too, which must be construed most strongly in favor of the State, and the parties signing the same must strictly comply with its terms. (*Barney* v. *Newcolm*, 9 Cush. 56; *Champlain* v. *The People*, 2 N. Y. 82.)

I am of opinion that it is not necessary, in order to create a liability, that the crime for which a person is admitted to bail be set forth or described in the undertaking of bail

with the same exactness as is required in an indictment or a commitment, and that it is sufficient if the same is referred to in general terms. (*State* v. *Marshall,* 21 Iowa, 143.)

What is the object of an undertaking of bail? Certainly not to charge a person with a crime for the purpose of entering upon an examination therefor, but simply that the sureties will secure the attendance of the party in conformity with the terms of their contract.

It is said that "one branch of the facts necessary to constitute the cause of action is that the defendant Wells was before a magistrate charged with a crime, that an examination was had, and that he was held to answer;" and it is obvious that the complaint is held insufficient upon the assumption that it does not show that Wells was charged with the commission of a crime. The undertaking recites, and the complaint, following the written instrument, alleges, that Wells was held to answer "on a charge of shooting and killing James Dennis." I am wholly satisfied that "shooting and killing" and "homicide" are convertible terms. Of course I concede that an indictment charging Wells with simply "shooting and killing James Dennis," without other allegations of intent, malice, etc., would be insufficient. But the case in hand is not that of an indictment. Wells was before the magistrate for examination, and that officer, having sufficient cause to believe that he had shot and killed James Dennis, held him to answer and admitted him to bail.

The rules governing common law recognizances are from analogy applicable to these statutory undertakings, and at common law it was only necessary to set out in the recognizance the kind or class, and not the particular degree of the crime for which the party was to answer. (1 Stew. and Port. 465; *Simpson* v. *Commonwealth,* 1 Dana, 523; *Commonwealth* v. *West,* Id. 165.)

I cannot appreciate the force of that reasoning which enables a surety to avoid his liability upon an undertaking, after default of the principal, upon the ground that the crime is not set out technically, when our statute itself only

requires a brief statement of the nature of the crime to be inserted in the undertaking. (Crim. Code, § 267.)

The contract was a voluntary contract. By it the sureties became the friendly jailers of the principal. It stands on its own terms, and is independent of any previous proceedings. (*McCarty* v. *The State*, 1 Blackford, 339.) I have already stated its object, and, in construing it, that object should certainly not be lost sight of. (*Blossom* v. *Griffin*, 13 N. Y. 569; *Atwood* v. *Cobb*, 16 Pick. 229.)

It seems to me that the whole case turns upon the solution of the question whether in using the words "shooting and killing," the draftsman filled the measure of the statute, which provides that in an undertaking of bail the crime may be briefly described or generally designated. If "shooting and killing" is not a crime, if the words do not describe a crime generally, the allegation in the complaint predicated thereon is insufficient and the demurrer is well taken, otherwise not.

I have said that "shooting and killing" and "homicide" are convertible terms. In 1 Hawkins, Pleas of the Crown, ch. 8, § 2, homicide is described to be "the killing of a man by a man." Wells shot and killed Dennis; therefore, Wells committed homicide. Is homicide a crime? From the time of Sir Michael Foster, who first collected and systematized the principles of the modern law of homicide, down to the present day, the law has been, and now is, that every killing of a human being is presumed to be unlawful. (Hawkins, vol. 1, ch. 31, § 32; Gilbert, Ev. 234; Blackstone, 4 Com. 201; Phillips, 1 Ev. ch. 10, § 2, and Greenleaf, 1 Ev. § 34.) Even Bishop (2 Cr. Law, § 616 *et seq.*), admits this to be the undoubted law. Nor are we left to the text writers alone; the reports are full of cases directly and emphatically in point. In *State* v. *Anderson* (2 Tenn. 6), the broad doctrine is laid down that homicide is presumed to be murder unless extenuating circumstances are shown. In the celebrated Selfridge case Ch. J. Parker told the jury that when a homicide is committed the law implies malice. In *People* v. *McLeod* (1 Hill, 377–436), it was held that "all homicide is presumed to be malicious, and, therefore, mur-

der, until the contrary appears from evidence." In *Hill* v. *Commonwealth* (2 Gratt. 594), the law was laid down to be that every homicide was *prima facie* murder; so also in *Choice* v. *The State* (31 Geo. 424, 464), and *Clarke* v. *The State* (35 Geo. 75). The same rule was held in a late capital case in England. (*Regina* v. *Maloney*, 9 Cox, Cr. Ca. 6.) The presumption that all homicide is unlawful prevails in Ohio (*State* v. *Turner*, 1 Ohio St. 422; and *State* v. *Town*, Id. 75); in Mississippi (*Hogue* v. *The State*, 34 Miss. 616); in Illinois (*Murphy* v. *The People*, 37 Ill. 447); in Minnesota (*The State* v. *Shippey*, 10 Minn. 223); in Kentucky (*Smith* v. *Commonwealth*, 1 Duvall, 224); in Pennsylvania (*Cathcart* v. *Commonwealth*, 37 Penn. 108; *Coin* v. *Drum*, 58 Penn. 9). It is useless to multiply citations; even a cursory examination will show that the whole current of authorities supports the proposition.

I am aware that the force of some of the authorities cited is broken by the provision of our Criminal Code, § 519, which provides that "there shall be some other evidence of malice than the mere proof of killing to constitute murder in the first degree, unless the killing was effected in the commission or attempt to commit a felony." In this State the mere fact of killing does not raise so strong a presumption of malice as to warrant a conviction of murder in the first degree, but it may warrant a conviction of murder in the second degree, or of manslaughter.

For the foregoing reasons I think the judgment of the Court below should be affirmed.